IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **SUSI KONTGIS**<br><br>　　　　　　Plaintiff,<br>vs.<br><br>**SALT LAKE CITY CORPORATION, RALPH BECKER, DAVID EVERITT, RALPH CHAMNESS, DEBRA ALEXANDER, AND JOHN DOES I-X,**<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:11CV1078 DAK |

This matter is before the court on Defendants' Motion for Summary Judgment[1] and on Plaintiff Susi Kontgis's Motion for Partial Summary Judgment.  A hearing on the motion was held on January 14, 2015.   At the hearing, Plaintiff was represented by Chad M. Steur. Defendants were represented by Jonathan G. Pappasideris and Margaret D. Plane.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

---

[1] The Defendants are Salt Lake City Corporation (the "City"), Ralph Becker, David Everitt, Ralph Chamness, and Debra Alexander (the "Individual Defendants") (collectively referred to as "Defendants").

## I. FACTUAL BACKGROUND[2]

Ms. Kontgis was a long-time employee of the City. At the time of her layoff, she was employed as a Senior Administrative Analyst for the City. At the time of the actions at issue, Ralph Becker ("Mayor Becker") was the Mayor of Salt Lake City. David Everitt ("Mr. Everitt") was the City's Chief of Staff, Debra Alexander ("Ms. Alexander") was the Director of the City's Human Resources Department, and Ralph Chamness ("Mr. Chamness") was a Senior City Attorney in the Salt Lake City Attorney's Office.

In February 2009, Ms. Kontgis was assigned to the City's Capital Asset Management ("CAM") Division within the Administrative Services Department. The CAM consisted of five total employees, including Ms. Kontgis. In April 2009, faced with a difficult economic climate, City Administration began to discuss, among other things, the possibility that layoffs might be necessary at some point in the future. Toward that end, the City Administration started examining, among other things, the City's existing layoff ordinance.

The City's existing Layoff Ordinance provided that "whenever it is necessary to reduce the number of employees in any city department because of lack of work or lack of funds, the city shall wherever possible attempt to minimize layoffs by readjustment of personnel through

---

[2] The court finds that these fact are undisputed for purposes of Defendant's Motion for Summary Judgment. Plaintiff purports to dispute some of the facts, but the deposition citations used to disputed various facts generally do not create a genuine issue of material fact. The task of verifying Plaintiff's purportedly disputed facts has been difficult, given the lack of separately filed exhibits in Plaintiff's 96-page Memorandum in Opposition to Defendant's Motion for Summary Judgment, but despite its efforts, the court has been unable to discern any genuine issue of material fact.

reassignment of duty in other departments." This process of reassigning employees was known as "bumping rights." Where reassignment was not possible, the Layoff Ordinance stated that seniority was the sole consideration in designating employees for layoff. Specifically, the ordinance stated that "[p]ermanent employees shall be the last to be laid off, in inverse order of the length of service of employees in the same job classification performing the same job functions and duties."

The practice of using seniority as the sole consideration for layoff and reassignment, however, directly conflicted with the City's goal of minimizing the impact of layoffs. For example, the practice of "protecting" employees with seniority through "bumping" (where the most senior employee, who was typically the highest paid, bumped a less senior employee and took their position) caused the City to actually have to eliminate more positions in order to achieve the desired cost savings. In addition, relying solely on seniority for the purpose of layoff designations without considering an employee's entire job history and performance resulted in undesirable inefficiencies.

City Administration proposed amending the layoff ordinance to remove the requirement of seniority being the sole factor in layoff designations and eliminate the practice of "bumping." In addition, City Administration recommended changing the Employee Appeals Board Ordinance. The Employee Appeals Board Ordinance provided a grievance procedure, in accordance with state statute, for discharged employees. Because the relevant state statutes (Sections 10-3-1105 and 10-3-1106 of the Utah Code) had recently been amended by the legislature, the City needed to amend the Employee Appeals Board Ordinance accordingly to

comply with the changed state law.  As part of this ordinance amendment process, and even though state statute did not require it, City Administration proposed providing laid-off employees with a right to appeal to the Employee Appeals Board.

Although not obligated to do so, City Administration discussed these proposed changes to the Layoff and Employee Appeals Board Ordinances with the three-member Executive Committee of the Professional Employees Council ("PEC").  The PEC was an informal loosely organized employee group that purported to represent the interests of all City employees whose terms and conditions of employment were not covered by a memorandum of understanding with an AFL-CIO affiliated trade union (i.e., non-represented employees).  The PEC was not a bargaining unit. While the City historically sought the input of the PEC on issues pertaining to non-represented employees, the PEC's role consisted of nothing more than expressing its opinion.

In September 2009, following a series of meetings in which the proposed changes to the Layoff and Employee Appeals Board Ordinances were explained, the Executive Committee of the PEC tentatively approved the changes.  On October 14, 2009, Mr. Everitt transmitted the proposed amendments to the Layoff and Employee Appeals Board Ordinances to the City Council.  With respect to the Layoff Ordinance, Everitt noted that the proposed amendment "eliminates the requirement that City seniority be the deciding factor in making layoff decisions."

On November 4, 2009, the Executive Director of the City Council informed City Administration that the City Council would receive a briefing on the proposed ordinance

changes on November 10, 2009 and would vote on whether to adopt them on November 17, 2009.  Approximately one week later, on November 10, 2009, the City Council received a memo from Sylvia Richards (a member of the City Council staff) summarizing the proposed changes to the Layoff and Employee Appeals Board ordinances.  That night, Richards, Alexander, and Chamness briefed the City Council on the proposed changes.

On November 12, 2009, Pat Peterson ("Peterson"), the President of the PEC, transmitted copies of the proposed new Layoff and Employee Appeals Board ordinances to PEC representatives.  Some PEC representatives provided negative feedback to Peterson regarding the proposed amendments.  As a result, Peterson scheduled a meeting with the PEC representatives for November 16, 2009 to discuss their objections.  Following the November 16, 2009 meeting, Peterson asked the City Council to postpone the vote on the Layoff and Employee Appeals Board ordinances.  The City Council declined to do so.

On November 17, 2009, the City Council passed the new Layoff and Employee Appeals Board ordinances.  Despite the opportunity to do so, neither Peterson nor any other member of the PEC Executive Committee attended the City Council meeting to object to the proposed changes.  In December 2009, the City revised its internal procedures pertaining to layoffs and the Employee Appeals Board to comport with the newly amended Layoff and Employee Appeals Board ordinances.

In April 2010, City Administration determined that, due to the City's financial situation, layoffs of City employees would be necessary.  Ultimately, City Department Directors designated approximately twenty-five (25) individuals for layoff.  Ms. Kontgis was not among

them. In fact, when Mayor Becker transmitted his Recommended Budget to the City Council, he specifically recommended no personnel changes within CAM. In other words, as of April 2010, City Administration had not designated Ms. Kontgis for layoff.

However, in late May 2010, the City Council–per its legislative prerogative–opted to disregard the Mayor's budget recommendations with respect to CAM and elected to eliminate two specific positions–Capital Asset Management Director and Senior Administrative Analyst (Ms. Kontgis' position)–in order to realize approximately $240,000 in savings.

On June 1, the City Council formally voted to eliminate the two CAM positions, including Ms. Kontgis' position. Ms. Kontgis was verbally notified of this decision the following day. As a result of the City Council's decision, Mr. Everitt informed Ms. Kontgis that she had been designated for layoff "due to the City Council's decision to discontinue funding for your position based upon budgetary issues." Ms. Kontgis was also apprised of her right to file an appeal with the Employee Appeals Board.

Five days later, on June 7, 2010, Ms. Kontgis wrote a letter to the City Council asking them to reconsider their decision. As of June 7, 2010, Ms. Kontgis understood that, although the City Council had voted to eliminate her position, their action would not be final and official until June 16, 2010. Other than her June 7 letter, however, Ms. Kontgis did not communicate with the City Council in any way. For example, she did not go to the City Council meeting and speak in opposition to the proposed elimination of her position.

Following the formal City Council vote, Mr. Everitt presented Ms. Kontgis with a letter placing her on layoff status effective immediately. The letter informed Ms. Kontgis that she

would "be released from her employment with Salt Lake City Corporation effective July 16, 2010." Additionally, the letter stated that Ms. Kontgis had the "right to appeal the City Council's layoff decision to the Employee Appeals Board."[3] If she chose to file such an appeal, she was required to "submit written notice on the proper form to the City Recorder's Office no later than Wednesday, June 30, 2010." Mr. Kontgis' employment with the City ended on July 17, 2010. Mr. Kontgis filed an untimely appeal on July 28, 2010, which was dismissed. The Utah Court of Appeals subsequently affirmed this decision.

Ms. Kontgis subsequently filed the instant action, alleging causes of action for (1) Unconstitutional Ordinance (Employee Appeals Board Ordinance); (2) Unconstitutional Ordinance (New Layoff Ordinance); (3) Violation of Due Process; (4) Violation of Equal Protection; (5) Violation of First Amendment Right to Freedom of Speech; (6) Violation of Utah's Right to Work Law; (7) Breach of Implied Contract (Traditional Layoff Procedure) ; (8) Breach of Implied Contract (Seniority); (9) breach of Implied Covenant of Good Faith and Fair Dealing; (10) Intentional Infliction of Emotional Distress; and (11) Negligent Infliction of Emotional Distress. On a previous Motion to Dismiss, brought by Defendants, the court dismissed the Third through Twelfth Causes of Action against the Individual Defendants in their official capacities. The court also dismissed the Causes of Action against the City for Intentional and Negligent Infliction of Emotional Distress, and dismissed Plaintiff's Cause of

---

[3] With regard to appeal rights in the context of a layoff, the Employee Appeals Board Ordinance contained the following provision: "If an appeal is based upon a layoff designation, the review by the designated panel [of the Employee Appeals Board] shall be limited to whether the city substantially followed its own layoff procedures when it designated the employee for layoff."

Action for Violation of Utah's Right to Work Law and for an Equal Protection Violation.[4]

## II.  DISCUSSION

### A.  UNCONSTITUTIONAL ORDINANCES

The first and second causes of action asserted by Ms. Kontgis are both styled as "unconstitutional ordinance" claims, but she fails to identify any provision of either the federal or state constitution that the City has allegedly contravened.[5] In her opposition memo, Kontgis appears to argue that the EAB Ordinance and Layoff Ordinance impermissibly conflict with state law.  Defendants contend that neither the Layoff Ordinance nor the EAB Ordinance conflicts with any state law.

Under Utah law, "where a city ordinance is in conflict with a state statute, the ordinance is invalid at its inception." *Salt Lake City v. Newman*, 2006 UT 69, ¶ 7, 148 P.3d 931 (internal quotation and citation omitted).  To determine whether a conflict exists between an ordinance and a statute, "the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Id*. (internal quotation and citation omitted).  Put another way, "local governments may legislate by ordinance in areas previously dealt with by

---

[4] *See* Memorandum Decision and Order dated September 20, 2012, Docket No. 18.

[5] On September 26, 2014, almost three years after this case was originally filed, Plaintiff filed an Amended Complaint, which attempted to assert an Equal Protection claim. *See* Docket No. 48.  The Amended Complaint, however, was stricken by the court because Plaintiff had filed it without leave of court and almost a month after Defendant had filed a Motion for Summary Judgment.  Docket No. 49.  On November 14, 2013–approximately 10 months earlier–the court had granted Plaintiff leave to file an amended complaint, but she failed to do so.  Docket No. 38.  Accordingly, Plaintiff has not asserted an Equal Protection Claim.

state legislation, provided the ordinance in no way conflicts with existing state law (i.e., permitting that expressly prohibited by statute, or forbidding that expressly permitted by statute)." *Id*. at ¶ 9 (internal quotation and citation omitted).

Additionally, "in the absence of express conflict" with a statute, an ordinance will be upheld "unless there is some indication of incompatibility with the state statutory scheme." *Id*. at ¶ 10. "Implied conflict alone does not render an ordinance unconstitutional; impermissible conflict instead arises when provisions are contradictory in the sense that they cannot coexist." *Id*. (internal quotation and citation omitted). In short, "an ordinance is not unconstitutional merely because it implicitly conflicts with a state statute." *Id*.

The court finds that there is no conflict between any state law and either the Layoff Ordinance or the EAB Ordinance, and thus, Defendants are entitled to judgment as a matter of law on Plaintiff's First and Second Cause of Action.

**B.   VIOLATION OF DUE PROCESS PURSUANT TO 42 U.S.C. § 1983.**

While it is unclear whether Kontgis is alleging a procedural or a substantive due process claim (or both), Defendants argue that neither claim has merit. With respect to her substantive due process cause of action, "[a] public employee with a property interest in continued employment has a substantive due-process right not to be terminated for arbitrary or capricious reasons." *Darr v. Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007). *Id*. at 1257. For a substantive due process claim to succeed, a court must conclude that the "governmental action is arbitrary, irrational, or shocking to the contemporary conscience." *Id*. Defendants also contend that the Individual Defendants are entitled to qualified immunity in any event.

9

Regarding her procedural due process claim, she claims that this cause of action is based on her belief that she was not given full disclosure that her job was being eliminated. Indeed, she has moved for partial summary judgment on this procedural due process claim.[6] Yet, the undisputed facts show that Ms. Kontgis was notified of the City Council's decision to defund her position within one day of the Council initially voting on the question. Ms. Kontgis also argues that she "was not given any kind of an opportunity to dispute the actions." Again, the undisputed facts debunk her assertion. Ms. Kontgis wrote a letter to the City Council asking them to reconsider their decision. Despite having the opportunity to appear in person before the City Council and contest their decision to defund her position, Ms. Kontgis failed to do so. She also concedes that she was aware that she had a right to appeal to the Employee Appeals Board and retained counsel to file such an appeal. However, Ms. Kontgis failed to file a timely appeal to the Employee Appeals Board and, as such, her appeal was dismissed – a decision upheld by the Utah Court of Appeals.

As argued by Defendants, Ms. Kontgis' procedural due process claim is similar to that asserted by the plaintiff in *Johnson v. City of Murray*, 909 F.Supp.2d 1265 (D. Utah 2012). In *Johnson*, the Murray City Council voted to outsource the functions of the City's Animal Control Department, which resulted in the elimination of the plaintiff's position as an animal control

---

[6] To support her claim, she seems to contend that Defendants intentionally precluded Plaintiff from taking advantage of her due process rights by claiming that her lay off was done by the City Council and by amending the layoff procedure to eliminate her right to have an written analysis completed by a Department Director as to all the factors that were considered in the decision to lay her off.

officer.  *Id*. at 1282.  The plaintiff responded by alleging that her procedural due process rights were violated because the City's decision to outsource its animal control department resulted in the termination of her employment.  The court rejected the argument and granted summary judgment to the municipality on the plaintiff's 42 U.S.C. § 1983 due process claim.

In its decision, the court emphasized that "[n]ormally, a procedural due process claim arises when an employee is terminated for some form of misconduct without being given an adequate opportunity to respond to the allegations" and went on to note that "[t]his is not a case where the City terminated Plaintiff as a result of Plaintiff's misconduct."  *Id*. at 1293.  Rather, similar to the City Council's decision to defund Kontgis' position, the plaintiff in *Johnson* "was terminated as a result of the City outsourcing the animal control department." *Id*.  As such, "[e]ven if the Court assumes that Plaintiff has a property interest such that she is entitled to procedural due process regarding the City's decision to outsource the animal control department[,] . . . [i]t is undisputed that the City held a hearing . . . during which Plaintiff, through her attorney, appeared and was able to present evidence disputing the City's reasons for outsourcing the animal control department." *Id*.  Because "[t]he City's decision was not made until after hearing evidence from all interested parties," the court found that the City provided the plaintiff with due process notice and the opportunity to respond.  *Id*.

Like the plaintiff in *Johnson*, Ms. Kontgis received notice of the proposed defunding of her position and had the opportunity to be heard and voice her opposition to the proposal, which she admits she consciously chose not to do.  Therefore, she has no tenable argument that the City or the Individual Defendants deprived her of procedural due process.

Accordingly, the court finds that Ms. Kontgis' Motion for Partial Summary Judgment on this claim is denied, and Defendants' motion on Plaintiff's Third Cause of Action is granted. Plaintiff has failed to create a genuine issue of disputed fact to preclude summary judgment on Defendants' motion and Defendants are entitled to judgment as a matter of law.  In any event, even if she had created a genuine issue, the court finds that the Individual Defendants are entitled to qualified immunity on this claim because Plaintiff has not demonstrated that any of the Individual Defendants violated a clearly established right.

**C.  VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH**

Ms. Kontgis has not created any genuine issue of material fact as to her claim that Defendants violated her right to free speech.  She admits that neither the City nor the Individual Defendants ever prevented her from speaking at any type of meeting.  Kontgis admits that neither the City nor the Individual Defendants ever prevented her from speaking to or communicating with the City Council.   To the extent that Ms. Kontgis bases her claim on an allegation that the City refused the PEC's request to postpone the scheduled vote on the EAB and Layoff Ordinances, that action, if assumed to be true, does not amount to a violation of Ms. Kontgis' free speech rights.

Accordingly, Plaintiff has failed to create a genuine issue of disputed fact on this claim, and Defendants are entitled to judgment as a matter of law.[7]

---

[7]  Again, the court finds that the Individual Defendants are entitled to qualified immunity on this claim because Plaintiff has not demonstrated that any of the Individual Defendants violated a clearly established right.

**D.     CLAIMS FOR BREACH OF IMPLIED CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Ms. Kontgis takes issue with the City's modification of the "Traditional Layoff Procedure" following the passage of the new Layoff Ordinance in 2009 and contends that this modification constitutes a breach of an implied contract.  In their motion, Defendants argue that the "traditional layoff procedure" that provided for bumping rights was not a contract with Ms. Kontgis and that she has no factual or legal authority to support this claim.

The court agrees with Defendants that Ms. Kontgis has failed to create a genuine issue of disputed fact on her contract claims, and Defendants are entitled to summary judgment.

**E.  INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

While the court has no doubt that Plaintiff's layoff caused her significant distress, particularly after her long tenure with the City, she has not created a genuine issue of material fact regarding either her claim for intentional or negligent infliction of emotional distress.  The undisputed facts establish that none of the Individual Defendants engaged in any intentional conduct toward Ms. Kontgis for the purpose of inflicting emotional distress (or where they should have known that such would result), and the no reasonable jury could find that they acted in an "outrageous" and "intolerable" manner.

## III.  CONCLUSION

for the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment [Docket No. 46] is DENIED, and Defendants' Motion for Summary Judgment [Docket No. 47] is GRANTED.  Plaintiff's Complaint is DISMISSED with prejudice.  The

Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff and to close this case.

DATED this 25th day of March, 2015.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge